

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

September 23, 2024

**BY ECF & EMAIL**

The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Parker*, 23 Cr. 250 (PMH)

Dear Judge Halpern,

      The Government respectfully submits this letter in advance of the defendant Travis Parker's sentencing, currently scheduled for October 3, 2024. The parties have stipulated to an applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 33 to 41 months' imprisonment (the "Stipulated Guidelines Range" or "Guidelines Range"). For the reasons explained below, a sentence within the Guidelines Range would be sufficient but not greater than necessary to serve the purposes of sentencing.

**A.    Factual Background**

      In 2022, as part of an investigation into the sale of controlled substances by the defendant, law enforcement used a confidential informant ("CI") to conduct two controlled buys of narcotics from the defendant. (Presentence Investigation Report ("PSR") ¶ 8.)

      The first controlled buy occurred on or about March 4, 2022. On that date, the CI was given $2,650, of which $2,400 was to be used to purchase 300 fentanyl pills from the defendant and $250 was repayment for the CI's outstanding debt to the defendant. At a location in Rockland County, New York, the CI gave the $2,650 to the defendant and received 300 pills from the defendant. Additionally, the defendant provided the CI a small bag of powdery substance that the defendant represented was cocaine. Testing by a Drug Enforcement Administration ("DEA") laboratory later confirmed that the pills weighed 32.5 grams and tested positive for fentanyl, while the powdery substance weighed 1.27 grams and tested positive for cocaine. (PSR ¶ 9.)

      The second controlled buy occurred on April 8, 2022. On that date, the CI was given $3,200 to purchase 400 fentanyl pills from the defendant. At the same location in Rockland County as the first controlled buy, the CI gave the $3,200 to the defendant and the defendant provided approximately 400 pills to the CI. Testing by a DEA laboratory confirmed that the pills weighed approximately 43.9 grams and tested positive for fentanyl. (PSR ¶ 10.)

**B. Procedural History and Guidelines Calculation**

On May 17, 2023, a grand jury returned an indictment charging the defendant with two counts of distributing and possessing with intent to distribute fentanyl. (*See* Dkt. No. 1.) On May 19, 2023, the defendant was arrested. On that same day, he was presented before the Honorable Andrew E. Krause, United States Magistrate Judge for the Southern District of New York, and released on bail. (Dkt. No. 2.) On April 18, 2024, the defendant pled guilty before this Court to Count One and a lesser-included offense in Count Two. (*See* Minute Entry, April 18, 2024.) That same day, the defendant made a motion to remain out on bail pending his sentencing, and the Court granted that motion. (*Id.*)

As reflected in the plea agreement, the applicable Guidelines range is 33 to 41 months' imprisonment, calculated on an offense level of 19—base offense level of 24, because the total amount of fentanyl was 76.4 grams; two-level reduction for, based on the information currently available to the Government, appearing to meet the criteria set forth in U.S.S.G. § 5C1.2; and a three-level reduction for timely acceptance of responsibility—and 2 criminal history points, placing the defendant in criminal history category II. (PSR ¶ 5.) These calculations are consistent with those made by the Probation Office. (PSR ¶¶ 17-32.)

Probation recommends a sentence of 24 months' imprisonment based on the need for "specific and general deterrence, respect for the law, and just punishment." (PSR at 27.)

Defense counsel seeks a further downward variance from the Guidelines Range to a sentence without any imprisonment based on the following arguments: as a starting point, adjusted JSIN data indicates that courts in this District have varied the sentence of similarly situated defendants to approximately 21 months' imprisonment; the defendant's rough childhood, which included a largely absent biological father, a drug-supplying step-father, and a drug-addicted mother; the defendant's limited criminal history; the defendant's apparent termination of criminal activity before his arrest; and the defendant's general compliance with the terms of his pre-trial and pre-sentencing release on bail. (Def. Mem. 1, 6-12.)

**C. Discussion**

    **1. Applicable Law**

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence for criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Sentence Within the Guidelines Range Is Appropriate

The Government's recommendation of a sentence within the Guidelines Range is based on the seriousness of the offense, general and specific deterrence for future criminal conduct, promoting respect for the law, and the defendant's characteristics and history.

*First*, a sentence within the Guidelines Range would reflect the nature and seriousness of the offense and promote respect for the law. During the United States's more-than-decade-long opioid crisis, fentanyl has ravaged communities across the country. As the Court knows, fentanyl is a synthetic opioid many times more potent than heroin, and even tiny amounts can be deadly.[1] As measured in deaths alone, over a quarter million Americans have died from a fentanyl overdose since 2018.[2] The toll exacted through the sale and abuse of fentanyl has been especially devastating in recent years. According to data from the Centers for Disease Control and Prevention ("CDC"), more than 200 people died each day from an overdose involving synthetic opioids (excluding methadone) in 2022, and overdose deaths involving synthetic opioids (excluding methadone) topped more than 70,000 deaths each year in 2021, 2022, and 2023.[3] Within this district, the New York City Department of Health has reported that "[f]entanyl was the most common substance involved in overdose deaths," contributing to 81% of the more than 3,000 overdose deaths in New

---

[1] *See* DEA Facts About Fentanyl, *available at* https://www.dea.gov/resources/facts-about-fentanyl (explaining that "[t]wo milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage" and "42% of pills tested for fentanyl contained at least 2 mg of fentanyl, considered a potentially lethal dose." (last accessed September 23, 2024).

[2] *See* USAFacts, Are Fentanyl Overdose Deaths Rising in the US?, *available at* https://usafacts.org/articles/are-fentanyl-overdose-deaths-rising-in-the-us/; *see also* the National Institute on Drug Abuse, Drug Overdose Deaths: Facts and Figures, *available at* https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#Fig2 (noting that "[d]eaths involving synthetic opioids other than methadone (primarily illicitly manufactured fentanyl) continued to rise with 73,838 overdose deaths reported in 2022").

[3] *Id.*

York City. In Rockland County, where the defendant trafficked his fentanyl pills, the county suffered 56 deaths related to synthetic opioids (other than methadone) in 2021.[4]

Given these facts, dealing fentanyl is an extremely serious crime. Indeed, the deadliness of fentanyl was not lost upon the defendant when, at the height of the fentanyl epidemic, he was dealing fentanyl in 2022. As captured on an audio recording of the March 4, 2022 controlled buy, the defendant acknowledged in a conversation with the CI that certain celebrities had recently died after taking drugs that contained fentanyl. Furthermore, during his post-arrest interview, the defendant stated that he knew of a female victim who had died as a result of drugs sold by someone named Justin Turnick.[5] Given the defendant's selling hundreds of pills containing fentanyl to a CI despite having personal awareness of the deadliness of fentanyl, the Government believes that a sentence within the Guidelines Range would appropriately reflect the seriousness of the offense and further promote respect for the law.

*Second*, a sentence within the Guidelines Range is necessary to adequately deter the defendant and others. Although the defendant has just two prior criminal convictions, each of the convictions involved the criminal sale of controlled substances (cocaine in the first instance, and marijuana in the second). (PSR ¶¶ 30-31.) The defendant's sale of pills with fentanyl is the third controlled-substances conviction for the defendant and represents an escalation in the dangerousness of drug being sold. The repeated sale of drugs, even though interspersed between periods of time when there have been no arrests for selling drugs, bespeaks the fact that he was not learned the dangers of drugs and has not been deterred by the limited time he spent in prison. The sentence to be imposed by the Court needs to deter the defendant and others like him from continuing to push drugs into communities in and around the New York City area.

*Third*, a sentence within the Guidelines Range would take into account the defendant's characteristics and history. The Government recognizes that the defendant had an unstable childhood and has made strides within the last year or so to improve himself. However, the Government believes that these factors do not outweigh a sentence within the Guidelines Range, particularly when balanced against the seriousness of the instant offense and the defendant's lack of respect for the law. At most, they provide a justification for a sentence at the lower end of the Guidelines Range.

In sum, a sentence within the Guidelines Range would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

---

[4] *See* New York State Opioid Annual Report 2023, *available at* https://www.health.ny.gov/statistics/opioid/data/pdf/nys_opioid_annual_report_2023.pdf.

[5] Turnick pled guilty before this Court of selling fentanyl that resulted in three fatal fentanyl poisonings. (23 Cr. 344, Minute Entry on August 6, 2024.)

**D. Conclusion**

For the reasons set forth above, the Court should impose a sentence within the Guidelines Range of 33 to 41 months' imprisonment.[6]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Timothy Ly
Assistant United States Attorney
Tel: (212) 637-1062

Cc:   Elizabeth Quinn, Esq.

---

[6] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court imposes, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).